FILED

2008 Mar-31  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CLARENCE B. BLAIR, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:07-CV-837-VEH** |
| | ) |
| **CITY OF VESTAVIA HILLS, and** | ) |
| **VESTAVIA HILLS BOARD OF** | ) |
| **EDUCATION,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiffs Clarence Blair, Alex Jones, William Wood, Jones Investment Company

and Wood Family Partnership bring this environmental case against Defendants

Vestavia Hills Board of Education (the "Board"), McCrory Building Company, Inc.,

C.A. Murren and Sons Company, Inc. ("Murren"), and Argo Building Company Inc.

("Argo").  The pending motions/requests are:  (1) the Board's Motion to Dismiss

Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction (the

"Board's Motion to Dismiss") (Doc. #37) filed on February 21, 2008; (2) Argo's

Motion to Dismiss Third-Party Claims Or, in the Alternative, for a More Definite

Statement ("Argo's Motion to Dismiss") (Doc. #43) filed on February 29, 2008; and

(3) Plaintiffs' Request for Oral Argument (Doc. #49) filed on March 14, 2008.

As discussed more fully below, the Board's Motion to Dismiss is due to be and is **HEREBY GRANTED IN PART** and **DENIED IN PART**. The court's ruling on Argo's Motion to Dismiss is **DEFERRED**. Further, Plaintiffs' Request for Oral Argument is **DENIED** as not needed by the court.

## II.   BRIEF  STATEMENT OF FACTS

Plaintiffs are suing Defendants for violations of the Clean Water Act (the "CWA") and for related claims under Alabama law, including negligence, trespass, and nuisance. The alleged environmental damages stem from the current construction of Liberty Park Middle School, which is owned by the Board and is in close proximity to Sicard Hollow Road in the Liberty Park area of the City of Vestavia Hills. Plaintiffs contend that drainage, including sediment, from the disturbed Liberty Park construction site is directed to, and flows into, Coal Branch and the Little Cahaba River.

Each of the plaintiffs owns land or an interest in land which is downstream from the Liberty Park construction site.   Plaintiffs maintain that their property has been damaged by the sediment that is being discharged by the Liberty Park construction site.

The amended complaint includes eight (8) counts.  (Doc. #17).  In count 1,

2

Plaintiffs contend that Defendants are engaging in construction and land disturbance without a valid NPDES permit; count 2 is  for violating Alabama's water quality standards in violation of the CWA; count 3 is for the failure to comply with the terms of the construction NPDES Permit Program in violation of the CWA; count 4 is for nuisance; count 5 is for trespass; count 6 is for negligence; count 7 is for negligence per se; and count 8 is for wantonness and punitive damages.

The Board's third-party complaint against Defendants Murren and Argo states that it has made a request for defense and indemnity under Article 36, Indemnification Agreement, of the General Conditions of the Contract to Murren and Argo, but that both have refused to provide a defense and indemnity to the Board.  (Doc. #25).  As stated in the third-party complaint, the Board had a contract dated February 24, 2005, with Murren regarding the first phase of the Liberty Park Middle School construction, and a contract dated June 14, 2007, with Argo regarding the second phase of the Liberty Park Middle School construction.  Regarding the first phase, Murren received a Certificate of Substantial Completion on or about September 20, 2005.

## III.   SUBJECT MATTER JURISDICTION GENERALLY

As the Eleventh Circuit recognized in *Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003), while some questions of subject matter jurisdiction are appropriately decided under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows "the

trial court [to] free[ly] [] weigh the evidence and satisfy itself as to the existence of its

power to hear the case[,]" others are not:

> If a jurisdictional challenge does implicate the merits of the underlying
> claim then:
>
>> [T]he proper course of action for the district court ... is to
>> find that jurisdiction exists and deal with the objection as a
>> direct attack on the merits of the plaintiff's case.... Judicial
>> economy is best promoted when the existence of a federal
>> right is directly reached and, where no claim is found to
>> exist, the case is dismissed on the merits. This refusal to
>> treat indirect attacks on the merits as Rule 12(b)(1) motions
>> provides, moreover, a greater level of protection for the
>> plaintiff who in truth is facing a challenge to the validity of
>> his claim: the defendant is forced to proceed under Rule
>> 12(b)(6) ... or Rule 56 ... both of which place great
>> restrictions on the district court's discretion....

*Morrison*, 323 F.3d at 925 (citations and footnote omitted).

As the *Morrison* court further framed the subject matter jurisdictional inquiry

before it:

> We therefore must determine whether Appellees' motion to dismiss in this
> case implicated the merits of Appellant's FMLA action.  If it did, the
> district court should have treated the motion as a motion for summary
> judgment under Rule 56 and refrained from deciding disputed factual
> issues.

*Id.*; *see also Bennett v. U.S.*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) ("Nevertheless,

where-as here-the existence of subject matter jurisdiction [in the context of analyzing

a limited waiver of sovereign immunity] is inextricably intertwined with material facts

affecting the merits of the claim, a district court must be guided by the standard for summary judgment motions under Fed. R. Civ. P. 56.") (citations omitted).

## IV.   ANALYSIS

### A.   The Board's Motion to Dismiss (Doc. #37)

The  Board's Motion to Dismiss is divided into two sections and is **GRANTED IN PART** and **DENIED IN PART**.  As to the denial, which is discussed more fully immediately below, the CWA section of the Board's Motion to Dismiss involves several open questions which require further development by the parties consistent with the discovery as described in Plaintiffs' Rule 56(f) affidavit.  On the other hand, the second part of the Board's Motion to Dismiss seeks a dismissal of Plaintiff's state tort claims on the basis of state sovereign immunity, which is appropriate for determination at this stage of the proceedings.

### 1.   Plaintiffs' CWA Claims

In the first portion of its Motion to Dismiss, the Board seeks a dismissal of the CWA claims (counts 1 through 3) on the basis of 33 U.S.C. §1319(g)(6)(A)(ii),[1] the so-

---

[1]Section 1319(g)(6)(A) provides:

(A) *Limitation on actions under other sections*

Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter; except that

called "diligent-prosecution bar" that prohibits private actions when the state has commenced and is diligently prosecuting an enforcement action. *McAbee v. City of Fort Payne*, 318 F.3d 1248, 1251 (11th Cir. 2003).[2] *McAbee* is relied upon by both sides in support of their opposing positions.

Plaintiffs offer a variety of arguments in opposition to the Board's Motion to Dismiss. Plaintiffs contend that because the Board's subject matter arguments are merit-based, it is appropriate to treat the motion as one for summary judgment. Relatedly, Plaintiffs have requested relief pursuant to Rule 56(f) to conduct further

---

any violation-

. . . .

(ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection, or

(iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be, shall not be the subject of a civil penalty action under subsection (d) of this section or section 1321(b) of this title or section 1365 of this title.

33 U.S.C. § 1319(g)(6)(A).

[2]While *McAbee* involved potential bars under both subsections ii and iii, 318 F.3d at 1251-52, this case involves a potential bar under only subsection ii. Collectively, subsections ii and iii of § 1319(g)(6)(A) of the CWA are sometimes referred to as the "limitation-on-actions" provisions. *Id.* at 1250.

discovery.

The focus of the parties' jurisdictional argument hinges upon *McAbee*, in which the Eleventh Circuit held that "Alabama's public-participation provisions do not satisfy the standard for comparability," and accordingly affirmed the district court's ruling that under such circumstances the limitation-on-actions provisions of § 1319(g)(6)(A) of the CWA did not bar the private citizen plaintiff's CWA claims. *McAbee*, 318 F.3d at 1257. However, in reaching this decision, the Eleventh Circuit also emphasized that "the standard of rough comparability between classes of provisions is not stringent. The problem for the City in this case is that the differences in the statutes' public-participation provisions, as described above, strike at the heart of whether the statute 'provides interested citizens a meaningful opportunity to participate at significant stages of the decision-making process.' Because the public-participation provisions of Alabama law are not sufficiently comparable to the CWA's public-participation provisions, we hold that sections 1319(g)(6)(A)(ii) and 1319(g)(6)(A)(iii) do not preclude McAbee's citizen suit. Consequently, we need not address the compatibility of the applicable statutes' judicial-review provisions." *Id.*, 318 F.3d at 1257 (internal citation omitted). Earlier in its decision, the *McAbee* court determined that the penalty-assessment provisions were sufficiently comparable. *Id.*, 318 F.3d at 1256 ("Therefore, we determine the penalty-assessment provisions to be

7

'comparable.'").

Since the *McAbee* decision, the Alabama legislature has amended the Environmental Management Act. "It is undisputed that the legislature enacted the 2003 amendments to the Act in response to a decision of the United States Court of Appeals for the Eleventh Circuit, namely: *McAbee v. City of Ft. Payne*, 318 F.3d 1248 (11th Cir. 2003). In that case, a panel of the Eleventh Circuit Court of Appeals held that the Environmental Management Act, *supra*, and the Alabama Water Pollution Control Act, §§ 22-22-1 to 22-22-14, Ala. Code 1975, were not 'comparable' to the federal Clean Water Act, 33 U.S.C. § 1319(g), for purposes of the 'limitation-on-actions' provision of the Clean Water Act. The Alabama legislature subsequently enacted Act No. 397, Ala. Acts 2003, presumably to make the Environmental Management Act comparable to the federal Clean Water Act." *Alabama Dept. of Environmental Management v. Legal Environmental Assistance Foundation, Inc.*, 973 So. 2d 369, 372 (Ala. Civ. App. 2007). However, no reported post-*McAbee* decision exists on whether Alabama's amended Environmental Management Act brings it within rough comparability to the CWA such that the CWA's limitation-on-actions provisions would apply.[3]

---

[3]In *Legal Environmental*, the Alabama Court of Civil Appeals explained that it did not have to reach the issue of comparability:

> Although the parties and amici curiae address the matter in their briefs, we are not confronted with the issue whether § 22-22A-5 and § 22-22A-7, as

Based upon the court's preliminary review of the CWA jurisdictional issues, at least four (4) open questions exist regarding the application of the diligent-prosecution bar to this case: (1) whether, as a result of the 2003 amendments, the statutes' public-participation provisions are comparable; (2) whether the statutes' judicial-review provisions are comparable;[4] (3) whether "commencement" has

_____

> amended, are comparable to the federal Clean Water Act, 33 U.S.C. § 1319(g), for purposes of the "limitation-on-actions" provision of the Clean Water Act. Accordingly, we do not answer that question in this opinion.

*Id.*, 973 So. 2d at 379 n.5.

[4]As stated above, the *McAbee* court never reached this issue.

9

occurred;[5,6] and (4) whether "diligent prosecution" has occurred.  Related to these open

questions, Plaintiffs rely upon the Rule 56(f) affidavit of Gary A. Davis, Esq., in which

he states that "[n]o discovery has been conducted on the factual issues raised in

Defendant's motion and attachments regarding ADEM's diligent prosecution, adequacy

of notice of the proposed Consent Order, and the comparability of ADEM's

enforcement scheme with that established under the federal Clean Water Act." (Doc.

#46 at Ex. B ¶ 5).  Based upon Davis's affidavit and District Court Judge Propst's

decision in *McAbee* to convert the motion before him to one for summary judgment, the

---

[5]The *McAbee* court identified two (2) issues relating to the CWA provision that
were not on appeal and had not yet been addressed by the Eleventh Circuit:

> The requirements of "commencement" and "diligent prosecution" are not
> at issue in this appeal. Neither the CWA nor the Eleventh Circuit has
> defined what specific acts constitute "commencement," but most courts
> that have addressed the issue have concluded that issuance of an
> administrative consent order-like the one here-would satisfy the
> "commencement" requirement. *See, e.g., Ark. Wildlife Fed'n v. ICI
> Americas, Inc.*, 29 F.3d 376, 379-80 (8th Cir. 1994).  As for "diligent
> prosecution," the district court did a partial analysis of this requirement,
> but stated that additional discovery would be necessary before deciding
> whether Alabama was diligently prosecuting the action.

*McAbee*, 318 F.3d at 1251 n.6.

[6]In their brief, "Plaintiffs concede that ADEM has entered in an administrative
consent order with Defendant Vestavia, but do not concede that the administrative
consent order represents 'commencement' for any violations not specifically addressed
in said order."  (Doc. #46 at 10 (footnote omitted)).

court agrees with Plaintiffs that certain parts of the Board's Motion to Dismiss involve the need for further discovery, and is persuaded that the proper course is to evaluate these CWA jurisdictional issues on a more developed summary judgment record. Accordingly, Plaintiffs' Rule 56(f) request is **GRANTED**, the Board's Motion to Dismiss as to Plaintiffs' CWA counts is **DENIED** as premature, and the Board will have an opportunity to refile its motion as one for summary judgment upon completion of the limited discovery relating to the jurisdictional issues.[7]

### 2.    Plaintiffs' State Law Tort Claims

The second part of the Board's Motion to Dismiss seeks a dismissal of the state law tort counts (counts 4 through 8) on the basis of state sovereign immunity under Rule 12(b)(1).[8]  The Board's Motion to Dismiss is **GRANTED** as to these counts. *See*, *e.g.*, Memorandum Opinion (Doc. #17) entered on August 1, 2006, on Defendant's Motion to Dismiss (Doc. #5) in *Parton, et al. v. Talladega City Board of Education, et al.* (06-CV-706-VEH), which addressed the identical issue.  *Id.* at 20 ("Accordingly, Plaintiffs' state law claims against the Talladega City Board of

---

[7]At the end of this order, the court addresses applicable deadlines pertaining to the CWA jurisdictional issues.

[8]Because the Board's Motion to Dismiss does not involve a merits-based sovereign immunity challenge, it is appropriately addressed pursuant to Rule 12(b)(1).

Education are barred by [state] sovereign immunity.").

Additionally, as Plaintiffs have stated in response to the Board's Motion to Dismiss:  "Plaintiffs will voluntarily dismiss their state law tort claims against Defendant Vestavia and seek leave of the Court to amend their complaint to make claims for inverse condemnation and/or breach of implied contract under Alabama law." (Doc. #46 at 23).  Therefore consistent with Plaintiffs' concession, a dismissal of the state law tort claims on state sovereign immunity grounds is appropriate.

**B.    Argo's Motion to Dismiss (Doc. #43)**

A ruling on Argo's  Motion to Dismiss is **DEFERRED** in light of the instant ruling on the CWA section to the Board's Motion to Dismiss.  More specifically, if Plaintiffs' case against the Board is fully dismissed for lack of subject matter jurisdiction, then the Board concedes that, under those circumstances, a dismissal of its third-party complaint would be appropriate:  "The Board agrees with Argo's contention that if the underlying action by the plaintiffs against the Board is dismissed for lack of subject matter jurisdiction, then there is no basis for the Court to have subject matter jurisdiction of the Board's third-party action."  (Doc. #47 at 3).

If a dismissal of Plaintiffs' entire complaint against the Board is not appropriate on jurisdictional grounds, then further analysis of the sufficiency of the Board's third-party complaint against Argo will need to be completed.

Therefore, the court hereby **DIRECTS** the clerk of court to **ADMINISTRATIVELY TERM** Argo's Motion to Dismiss.  After the court rules on its subject matter jurisdiction, Argo may file a Motion requesting that the court administratively reinstate its Motion.

### C.    Deadlines

The limited scope of discovery allowed for by this order **SHALL** be completed no later than June 30, 2008.  The deadline for filing dispositive motions relating to the CWA's diligent-prosecution bar only is **SET** for July 31, 2008.  Any such motions or briefs shall comply with the requirements of Appendix II to the court's Uniform Initial Order.  (Doc. #8).  The overall  deadlines set forth in the  Revised Scheduling Order (Doc. #52) entered on March 24, 2008, remain in place absent further order from the court.

## V.    CONCLUSION

In sum, the Board's Motion to Dismiss is **GRANTED** as to the state tort claims (counts 4 through 8) and is otherwise **DENIED WITHOUT PREJUDICE**.  Accordingly, counts 4 through 8 of Plaintiffs' amended complaint are **HEREBY DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Further, the court's ruling on Argo's Motion to Dismiss is **DEFERRED** the

13

Motion is **ADMINISTRATIVELY TERMED**, and Plaintiffs' Request for Oral

Argument is **DENIED**.  Finally, the parties are **ORDERED** to comply with the various

deadlines set forth above.

      **DONE** and **ORDERED** this 31st day of March, 2008.

-

**VIRGINIA EMERSON HOPKINS**
United States District Judge

14